USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/20/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
LAWRENCE O. JOHNSON,                                                    :
                                                                        :
                          Petitioner,                      :     16-CV-5977 (JMF)
                                                                        :
            -v-                                                          :     MEMORANDUM OPINION
                                                                        :     AND ORDER
WARDEN, ATTICA CORRECTIONAL FACILITY,                                   :
                                                                        :
                          Respondent.                     :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Lawrence Johnson, a state prisoner proceeding *pro se*, was convicted following a jury trial of murdering his three-month-old daughter and thereafter sentenced to twenty-five years to life in prison. He now petitions for the writ of habeas corpus pursuant to Title 28, United States Code, Section 2254. (Docket No. 1 ("Petition")). In general, a federal court may grant a writ of habeas corpus only if (1) the state court's denial of the petitioner's claim "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States"; (2) the state court's denial of relief "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Cruz v. Superintendant*, No. 13-CV-2414 (JMF), 2016 WL 2745848, at *5-6 (S.D.N.Y. May 11, 2016). Applying those deferential standards here, Johnson's three claims all fall short, and his Petition is therefore DENIED.

Johnson's first claim relates to the admission of his videotaped confession at trial. (Petition 6). Liberally construed, Johnson's Petition renews an argument that he made on direct appeal: that the videotaped confession was erroneously admitted under *Missouri v. Seibert*, 542 U.S. 600 (2004), because it took place shortly after an unlawful interrogation. (*See* Docket No. 14 ("Knight Decl."), Ex. 9, at 69-77). In *Seibert*, a fractured Supreme Court held that a confession was inadmissible where the defendant had been given *Miranda* warnings mid-interrogation, after he made an unwarned confession. Writing for a plurality of the Court, Justice Souter held that admissibility turned on "whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires." *Seibert*, 542 U.S. at 611-12. Justice Souter identified "a series of relevant facts that bear on" that question: (1) the "completeness and detail" involved in the first interrogation; (2) the "overlapping content" of the pre-and post-*Miranda* statements; (3) the "timing and setting" of the interrogations; (4) the "continuity of police personnel" during the two interrogations; and (5) the "degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 615. Justice Kennedy, concurring in the judgment, applied a different test. In his view, admissibility turned on whether "the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." *Id.* at 622 (Kennedy, J., concurring in the judgment). Pursuant to his test, post-warning statements are admissible "unless the deliberate two-step strategy was employed." *Id.*

Significantly, there is a split among the Circuits with respect to whether the plurality's opinion or Justice Kennedy's opinion is controlling. *Compare United States v. Capers*, 627 F.3d 470, 476 (2d Cir. 2010) (recognizing that the Second, Third, Fifth, Eighth, Ninth, and Eleventh Circuits "apply[] Justice Kennedy's approach in *Seibert*"), *with United States v. Heron*, 564 F.3d

879, 884-85 (7th Cir. 2009) (declining to apply Justice Kennedy's "intent-based test"). In light of that split, there is a strong argument that *Seibert* is not "clearly established Federal law" for purposes of habeas relief. 28 U.S.C. § 2254(d); *see, e.g.*, *Miller v. Colson*, 694 F.3d 691, 699 (6th Cir. 2012) (concluding that a Supreme Court opinion was not clearly established federal law in part because of "the subsequent circuit split that developed in the wake of [the decision]"); *accord Evenstad v. Carlson*, 470 F.3d 777, 783 (8th Cir. 2006). *But see Morgan v. Morgensen*, 465 F.3d 1041, 1046 n.2 (9th Cir. 2006) ("The fact that there was a potential circuit split on this issue does not preclude our holding that the law was clearly established . . . ."). The Court need not decide that question, however, as Johnson fails to carry his burden under either approach. He falls short under Justice Kennedy's approach because he offers no evidence, or even argument, that the investigating detectives intended to sidestep *Miranda* to secure his confession. In fact, the only evidence in the record — summarized by the trial court in its pretrial suppression decision — suggests that the detectives did *not* deliberately withhold *Miranda* warnings at the outset of their interview with Johnson. (*See* Knight Decl., Ex. 3 ("Suppression Decision"), at 4 ("Since the police had no evidence pointing to defendant as the person responsible for his daughter's death, defendant was not considered a suspect at [the start of the interview] and was not read his *Miranda* rights.")). And Johnson falls short under the plurality's approach because, as the trial court found, the pre- and post-*Miranda* interviews were conducted by different people; the videotaped statement was made "after a definite and pronounced break in the interrogation" of approximately one-and-a-half hours; and "there was no evidence that the [later interviewer] used the suppressed statements to induce the video statement." (Suppression Decision 13; Knight Decl., Ex. 5, at 5-6). Given these factual findings, which are presumed to be correct, *see* 28 U.S.C. § 2254(e)(1), the Court cannot say that the Appellate Division's

decision on appeal — that, "after weighing the relevant factors," the videotaped statement was sufficiently "attenuated from" the pre-*Miranda* statements to be admissible, *People v. Johnson*, 7 N.Y.S.3d 106, 107 (App. Div. 2015) — is contrary to, or an unreasonable application of, clearly established federal law.

Johnson's second claim is that the prosecution failed to disclose evidence "favorable to" him. (Petition 6). At trial, the prosecution argued that Johnson's daughter died from blunt force trauma to the head, immediately causing her death. (Knight Decl., Ex. 8 ("330.30 Decision"), at 6). To that end, the prosecution called the Deputy Medical Examiner of the Office of the Chief Medical Examiner ("OCME"), who testified that while performing the autopsy she observed "both healing and recent fractures on the deceased's skull" and concluded that "the recent fractures were the result of blunt force which caused the trauma resulting in the child's death." (*Id.* at 6). Johnson maintained that he had not hit his daughter and that the death was caused by previous skull injuries. (*Id.* at 6-7). In support of his theory, he called his own forensic expert, who testified that he could not determine how old the fractures were based solely on photographic slides, but would "need slides of the skull tissue" itself to make such a determination. (*Id.* at 6). During cross-examination of the defense's expert, the prosecutor revealed that a portion of the victim's skull remained in the possession of the OCME. (*Id.* at 6-7). In response, the defense expert indicated that he was not certain "whether he could determine the age of the skull fractures through an examination of slides of the skull tissue." (*Id.* at 7). As a rebuttal witness, the prosecution called another medical examiner who had examined the

4

remaining skull fragment; that expert agreed with the first prosecution expert that "recent fractures were evident." (*Id.* at 7).

Johnson contends, as he did in a post-trial motion, that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), because the "tissue slides" themselves "were not available" during trial. (Petition 6). The trial court denied the post-trial motion for two reasons. First, the Court held that the "OCME is not a law enforcement agency, and, therefore, information in its possession is not considered to be in the prosecution's possession or under its control." (330.30 Decision 8 (citing *People v. Washington*, 654 N.E.2d 967 (N.Y. 1995)). Second, the Court held that the skull tissue "was not exculpatory" because no expert had examined the skull tissue and therefore "one does not know whether any expert would reach a conclusion about the age of the fractures that differed from that offered by the prosecution's experts." (330.30 Decision 8). The Appellate Division affirmed, concluding that Johnson "did not establish any . . . legal basis for setting aside the verdict, or any need for an evidentiary hearing." *Johnson*, 7 N.Y.S.3d at 107. Upon review of the whole record, the Court cannot say that these decisions are contrary to, or an unreasonable application of, clearly established federal law. One essential element of a *Brady* claim is that "the evidence at issue be favorable to the accused as exculpatory or impeaching." *Banks v. Dretke*, 540 U.S. 668, 671 (2004). Here, the trial court did not clearly err in holding that "[i]t is only defendant's speculation" about whether the evidence at issue (which may not even have been withheld from the defense during trial) would have been favorable to Johnson. (330.30 Decision 9). It follows that his *Brady* argument falls short. *See, e.g.*, *Jamison v. Griffin*, No. 15-CV-6716 (PKC) (AJP), 2016 WL 4030929, at *3 (S.D.N.Y. July 27, 2016) (denying habeas based on a *Brady* claim where the petitioner's "claim that the [evidence] was exculpatory was speculative"); *Jones v. Conway*, 442 F. Supp. 2d 113, 128 (S.D.N.Y. 2006) (dismissing a

5

habeas petition raising *Brady* claim because the "petitioner [was] unable to demonstrate the exculpatory nature of the inconclusive [evidence]").[1]

In his final set of arguments, Johnson effectively seeks to relitigate on the merits elements of the prosecution's case and his ultimate conviction. For instance, he takes issue with the truth of his videotaped confession on the ground that "the alleged motives for the statement did not exist to make the statement remotely true." (Petition 6). And, more broadly, he challenges the prosecution's theory of the case by contending that several of his purported motives for committing the crime did not exist at the time. (*See id.*). These arguments seem far-fetched at best. (*See, e.g.*, Knight Decl., Ex. 18, at 2-3 (trial court rejecting similar arguments in connection with a motion to vacate Johnson's conviction and noting that Johnson had "submitted no newly discovered evidence . . . and most certainly, no new evidence that could not, 'with due diligence on his part' have been produced at trial")). But regardless, they are not cognizable on federal habeas because, at best, they amount to nothing more than a claim of innocence. *See, e.g.*, *Sanchez v. Lee*, 508 F. App'x 46, 48 (2d Cir. 2013) (summary order) ("A claim of actual innocence 'is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993))).

For the foregoing reasons, Johnson's Petition is DENIED, and his case is DISMISSED. As Johnson has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue at this time. *See* 28 U.S.C. § 2253(c); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). In addition, this Court certifies,

---

[1] In light of the foregoing, the Court need not, and does not, address the state court's other ground for denying Johnson's *Brady* claim — namely, that OCME is not a law enforcement agency.

pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

      The Clerk of Court is directed to mail a copy of this Memorandum Opinion and Order to Johnson and to close this case.

      SO ORDERED.

Date: November 20, 2017
      New York, New York

JESSE M. FURMAN
United States District Judge